UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL JOSEPH MCDOWALL,

    Plaintiff,

v.

COLE DISTEL, et al.,

    Defendants.

Case No. 1:14-cv-780

Beckwith, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I. Background[1]

Plaintiff, who is proceeding *pro se*, brings this action against defendants under 42 U.S.C. § 1983.  As a *pro se* prisoner civil rights case, this case was automatically referred to the undersigned magistrate judge for initial screening, and continues to be referred for Reports and Recommendations on any dispositive motions.  A number of claims and defendants were dismissed on initial screening pursuant to 28 U.S.C. §1915(e) and 28 U.S.C. §1915A, but one claim against Officer Cole Distel was permitted to proceed.

In the portion of his original complaint that was deemed to state a non-frivolous claim, plaintiff alleged that on September 14, 2014 he was meditating on his bed in his cell at the Southern Ohio Correctional Facility.  (Complaint 5, Doc. 1).  According to plaintiff, the television in front of his cell was turned on for the express purpose of

---

[1]For the convenience of the Court, the same background is set forth in a Memorandum Order filed this day.

annoying him. He claimed the same ninety second segment was played repetitively for an hour and a half. Plaintiff further alleges that his water was shut off. After initially asking Officer Butterbaugh to turn off the television and turn his water back on, plaintiff made the same requests to Officer Distel. Plaintiff alleged that Distel responded by spraying him in the eye with pepper spray. As a result of the incident Plaintiff alleged that he is partially blind in his left eye. A conduct report followed, charging Plaintiff with attempting to spit on Distel. Plaintiff alleged that the conduct report was false.

Plaintiff paid the full filing fee for his case on November 6, 2014. On December 5, 2014, the undersigned filed a Report and Recommendation ("R&R") recommending that most claims and defendants be dismissed, but that Plaintiff's Eighth Amendment claim against Defendant Distel be permitted to proceed. (Doc. 15). On January 2, 2015, the presiding district judge adopted the R&R and directed Plaintiff to serve a summons and copy of his complaint on Defendant Officer Distel. (Doc. 20). Because Plaintiff does not proceed *in forma pauperis*, a summons form was issued to Plaintiff on December 5, 2014 for the purpose of fulfilling his duty to serve Defendant Distel.

Plaintiff subsequently filed motions claiming to have made a good faith attempt to serve Defendant Distal through the institutional prison mail service. On March 12, 2015, the undersigned initially directed Defendant Distal to show cause for his failure to answer or otherwise appear. (Doc. 23). However, after the State of Ohio entered a limited appearance as an interested party and alerted the Court to several procedural defects with Plaintiff's pleadings (all of which Plaintiff had signed as "secured party" in lieu of his name), the Court withdrew the prior "show cause" portion of its order, struck a

2

plethora of improper motions filed by Plaintiff, and explained that Plaintiff would be required to file a properly signed, amended complaint, or risk dismissal of this lawsuit:

> The Court has confirmed that Plaintiff has failed to sign his name on any of the pleadings in this case. In addition, many fail to contain a certificate of service as is required by S.D. Ohio Civ. R. 5.2. Therefore, every pleading filed by Plaintiff, with the exception of the complaint, will be stricken from the docket in this case.
>
> As to the complaint, Plaintiff is hereby given 30 days from the date of this order to file an amended complaint that bears his signature. Plaintiff may also amend the claims in his complaint to include any additional claims or add any additional parties. Any amended complaint that is filed will be reviewed *sua sponte* by this Court to determine whether the amended complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. 1915A(b). Should Plaintiff not timely file an amended complaint or seek an extension to do so, this Court will recommend that this matter be dismissed for failing to properly sign the complaint and for failing to properly serve the Defendant.

(Doc. 47). Notwithstanding that May 4, 2015 Order, Plaintiff filed two more improperly "secured party" documents that were stricken for the same reasons. (Docs. 48, 49, 51).

On May 11, 2015, Plaintiff filed his first "motion to file an amended complaint." (Doc. 50). In that motion, Plaintiff has affixed a signature of sorts, by signing simply "McDowall," and elsewhere "McDowall" with a copyright mark. The Court will accept the handwritten signature of "McDowall" as Plaintiff's legal signature.[2]

In addition to the motion to amend his complaint, Plaintiff has filed eleven additional motions to date: (1) "Motion to add parties" (Doc. 52); (2) "Motion to subpoena film" (Doc. 54); (3) "motion for representation/press charges against inmate

---

[2] As the Court pointed out in the July 27 Order overruling Plaintiff's objections to the undersigned's May 4, 2015 Order, Plaintiff "claims that he has a common law 'identity copyright' that should be a legally acceptable substitute for his signature." (Doc. 60). Judge Beckwith described Plaintiff's arguments as "utterly frivolous." (*Id.*).

Keith Lehmkuhl," (Doc. 57); (4) "motion to amend/add inspector L. Mahlman as a Defendant," (Doc. 58); (5) "motion to dismiss forgery & robbery Charges against Inmate Keith Lehmkuhl (Doc. 59); (6) "motion to submit evidence of remedy" (Doc. 61); (7) "motion to appoint counsel" (Doc. 62); (8) "motion for leave to file an amended complaint and motion to hire representation of counsel" (Doc 63); (9) "motion to appoint counsel (Doc. 64); (10) "motion to add sexual battery charges to the defendant," (Doc. 65); and (11) "motion for hearing," (Doc. 66).

Aside from the dozen currently pending motions, Plaintiff has filed two "Notices" (Docs. 53, 55). The first notice contains allegations against one or more incidents of correctional officers "looking at my privates"[3] but is unsigned, other than bearing the words "From: McDowall" at the top of the paper. The second Notice is apparently intended to confirm this Court's prior receipt of his motion seeking the appointment of counsel. Given that neither of the "Notices" are themselves motions and because they are redundant of other pending motions, the Notices require nothing further from this Court.

**II. Analysis of Pending Motions**

Plaintiff's pending motions are composed of a blend of dispositive and non-dispositive matters. The scope of this Report and Recommendation is intended to be limited to addressing matters that may be considered dispositive in nature; chiefly, the denial of most motions seeking to amend Plaintiff's initial complaint. A separate Memorandum Order has been filed this same day in order to address non-dispositive

---
[3]Most of the allegations use more crudely worded language.

4

matters. To the extent that some of plaintiff's twelve pending motions are redundant, they are discussed together.

### A. Five Proposed Amendments to the Complaint

As previously discussed, upon initial screening of Plaintiff's complaint, only one claim was deemed to be non-frivolous – a claim that Correctional Officer Distal had violated Plaintiff's Eighth Amendment right to be free of the excessive use of force, concerning an incident that allegedly occurred on September 14, 2014, when Defendant Distal sprayed Plaintiff with pepper spray. As a result of that incident, Plaintiff alleges that he suffers from permanent partial blindness in his left eye. Although the Court initially permitted that single claim to proceed, the Court warned Plaintiff in its May 4, 2015 Order that its acceptance of his Complaint was conditional upon his filing a properly signed version of the same complaint. The Court stated that Plaintiff would be permitted to add claims and/or additional defendants in any amended version of his complaint, conditioned upon the Court rescreening such amendments for frivolousness under the provisions of the Prisoner Litigation Reform Act.

Five of Plaintiff's pending motions seek to amend his original complaint. The Prison Litigation Reform Act requires courts to screen and dismiss prisoner complaints that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. "[C]ourts are required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners." *In re Prison Litigation Reform Act,* 105 F.3d 1131, 1134 (6th Cir.

5

1997). *See also Wershe v. Combs*, 763 F.3d 500 (6th Cir. 2014); 42 U.S.C. § 1997e(c)(1). Having considered the pending amendments under the applicable PLRA screening standards, the undersigned recommends that most of Plaintiff's proposed amendments be denied.

**1. First Motion for Leave to File Amended Complaint (Doc. 50).**

In the first "motion to file an amended complaint" filed within the thirty days designated for amendment by this Court (Doc. 50), Plaintiff appears to include what could be construed as an amended complaint, rather than merely a motion for leave to amend. In this construed first amended complaint, Plaintiff includes allegations that are similar to the allegations included in his original complaint against Defendant Distel, except that the date of the incident has been altered from September 14 as set forth in the initial complaint to October 3, 2014. (Doc. 50 at 1). The portion of the proposed amendment concerning Defendant Distel could be granted, to the extent that Plaintiff has signed his "motion for leave to file" his "amendment." However, because the allegations regarding Defendant Distel are revised again in later-filed motions seeking leave to amend and/or proposed amended complaints, Plaintiff's first motion to amend concerning Defendant Distel should be denied as moot.

The remainder of Plaintiff's first "motion to amend" should be denied because it does not survive PLRA screening standards. On the second page of his motion, Plaintiff includes numerous allegations relating to the alleged copyright of his name and/or his status as a "7th Amendment common-law Sovereign American citizen, born and naturalized in the sovereign Americas." (*Id.* at 2). None of this portion of the proposed amended complaint states any possible federal claim against any possible

6

defendant. The third page of Plaintiff's proposed amendment is similarly nonsensical and appears to be delusional and/or frivolous. (Doc. 50 at 3).

At the end of page 3, and in several other pages of the 18-page "amendment," Plaintiff appears to allege multiple new claims against new Defendants. For example, he alleges that on March 5, 2015, Defendant Larry Sammons cursed at and disciplined Plaintiff based on an argument over Plaintiff's "copyright," and that Defendant Sammons made a "legal and binding" contract to pay Plaintiff 10 million dollars, that Sammons has breached. (Doc. 50 at 3-4).

Plaintiff further alleges that "around June of 2014" correctional officers permitted other inmates to spit on him, and that Correctional Officer Ferris used excessive force by pepper spraying Plaintiff, and destroying Plaintiff's personal property. He alleges that Inspector Goodman filed a false report to Joanna Saul in Columbus. In August of 2013, he alleges that Sergeant Dillow also improperly pepper sprayed Plaintiff, cuffed him, and used excessive force against him, together with Jeff Swainy. He alleges that on October 18, 2013, Lt. Dave Rogers grabbed him and began choking him, while Carlos Lewis and Sgt. Dillow also used excessive force against him.

He next alleges that in January 2014, Lt. Esham pepper sprayed Plaintiff without reason, and subsequently subjected him to excessive force, together with Ryan Rush. Plaintiff alleges that another incident occurred on April 9, 2015 in which Correctional Officer Justice encouraged another inmate to spit on Plaintiff. He alleges that he has been 'sexually harassed" by Correctional Officers Porter, Bradley, Lawson, and Fabor from mid-February 2015 through the time of filing his proposed amended complaint. He states that all "Defendants named in this petition are individually being sued in their

personal capacities…" and cites 42 U.S.C. §1983 as well as the "A.D.A./Handicap prisoner." (Doc. 50 at 6).

Attached to Plaintiff's construed proposed amended complaint are a smattering of institutional "Informal Complaint Resolution" ("ICR") and "kite" forms and other writings concerning Plaintiff's "copyright" of "my persona." (*See e.g.*, Doc. 50 at 11).

Except for those allegations pertaining to Defendant Distel, all of the referenced "amendments" to Plaintiff's initial complaint should be rejected because they do not survive initial screening standards under the PLRA, and/or are so unrelated to Plaintiff's original claims that he should be required to bring any such claims in a separate action.

As stated, many claims deal with Plaintiff's alleged "copyright" of his name, alleged breach of contract, or Plaintiff's alleged "sovereign" or "secured party" status. Such claims appear to be a mixture of frivolous claims previously rejected by this Court and others. (Doc. 60); *see also generally, Martin v. Ohio*, 2009 WL 3135427 (S.D. Ohio, Sept. 23, 2009). Other proposed claims refer to the names of individuals in a rambling fashion in the body of the various "motions," without sufficient specificity as to whether they are intended to be Defendants, whether they are prison officials or officers employed by the state, in what capacity they are being named, what relief is being sought, or what precisely the individual did to violate any of Plaintiff's constitutional rights.

A number of Plaintiff's proposed amendments involve allegations that he was pepper sprayed on various occasions by different individuals. Those allegations bear at least a passing resemblance to the Plaintiff's original Eighth Amendment claim against Officer Distel, in which Plaintiff alleges that he suffers from partial permanent blindness

8

due to being pepper sprayed on or about October 3, 2014 (previously alleged as September 14, 2014). In addition to his claims of being pepper sprayed without reason on multiple occasions, Plaintiff includes other allegations relating to the use of force and/or general harassment.

Specifically, Plaintiff adds allegations that C/O Jon Ferris pepper sprayed Plaintiff without reason and denied Plaintiff a shower on an unknown date "around June of 2014," (Doc. 50 at 4); that in August of 2013, Sergeant Mike Dillow pepper sprayed him without reason and denied him a shower (and also slammed his head against a wall while another officer punched Plaintiff for 3-5 minutes); that on October 18, 2013, Lt. Dave Rogers choked Plaintiff while Carlos Lewis and Dillow were bending and twisting his cuffed hands, as an unidentified nurse drew blood without his consent; that on January 2014, Lt. Esham pepper sprayed him and subsequently brutally assaulted him, together with C/O Ryan Rush; that on April 9, 2015, C/O J. Justice "manipulated" a black inmate to come spit on Plaintiff; and that from mid-February 2015 through the filing of the amended complaint in May 2015, C/O's Robert Porter, Bradley, Lawson, and Fabor "sexually harassed" him, and that Deputy Warden William Cool and Unit Manager Mr. Oppy have exhibited wilful "negligence" by failing to "rectify these issues." (Doc. 50 at 6).

While leave to amend a complaint should be "freely given when justice so requires," *Forman v. Davis*, 371 U.S. 178, 182 (1962), proposed amendments to a prisoner's complaint must also be *sua sponte* reviewed under 28 U.S.C. §§1915 and 1915A. Courts have generally held in this regard that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a

9

multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)(citing 28 U.S.C. §1914(g)); *see also Hetep v. Warren*, 27 Fed. Appx. 308, 309 (6th Cir. 2001)(citation omitted, new unrelated claims against new defendants not allowed); *Miller v. City of Columbus*, 52 Fed. Appx. 672, 674 (6th Cir. 2002). Another magistrate judge and district judge in this Court adhered to the referenced rule in denying multiple proposed amendments by the prisoner-plaintiff in *Perdue v. Morgan*, 1:13-cv-878, 2014 WL 4922938 (S.D. Ohio July 8, 2014), R&R adopted at 2014 4912924 (S.D. Ohio Sept. 30, 2014).

Plaintiff's motion to amend fails to allege any facts concerning how the newly identified individuals' purported conduct in pepper spraying and/or separate violent assaults on Plaintiff had any connection to the original pepper spray incident alleged against Officer Distel. To the extent plaintiff seeks to name additional defendants and include multiple distinct Eighth Amendment claims on separate dates involving separate individuals, his allegations appear to state a separate causes of action that are unrelated to the instant litigation.[4] "[A] civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves

---

[4] Whether or not an allegation by an inmate that he has been pepper sprayed will always survive initial screening on Eighth Amendment grounds under 28 U.S.C. §1915A, is unclear. *See generally, Thompson v. Joseph*, Case No. 1:12-cv-992, 2014 WL 168918 (S.D. Ohio, April 29, 2014), R&R adopted at 2014 WL 2172894 (S.D. Ohio May 23, 2014)(granting summary judgment on pepper spray claim, discussing similar cases in Sixth Circuit). Having previously determined that Plaintiff's allegations of unprovoked pepper spraying by Defendant Distel, resulting in partial blindness, survive screening thresholds, the undersigned expresses no view on Plaintiff's allegations of similar incidents involving other individuals.

a common question of law or fact." *Proctor v. Applegate*, 661 F. Supp.2d 743, 778 (E.D. Mich. 2009)(quoting *Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J., May 14, 2008)); *see also Hendricks v. Wessell*, No. 2:11-cv-299, 2012 WL 395067, at *3 (S.D. Ohio, Feb. 7, 2012)(denying motion to amend to add new plaintiff and new defendant); *Lentz v. Loxton*, 12-12037, 2012 WL 7008152, at *3 (E.D. Mich. Oct. 26, 2012)(denying prisoner's motion to amend complaint where proposed amended complaint asserted unrelated claims against new defendants); *Scott v. Kelly*, 107 F. Supp.2d 706, 711 (E.D. Va. 2000)(denying prisoner's request to add new, unrelated claims to ongoing civil rights action as an improper attempt to circumvent the PLRA's filling fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).  Plaintiff's unrelated claims must be addressed in a separately filed new civil rights complaint, and not by multiple proposed amendments to the complaint in this action.

### 2. Motion To Add Parties  (Doc. 52)

Two days after his first proposed amended complaint, on May 13, 2015, Plaintiff filed a "motion to add parties" seeking to amend a second time.  In this second motion, Plaintiff seeks to add Attorney General Mike DeWine, United States District Judge Sandra Beckwith, and the undersigned magistrate judge as Defendants to this action. Plaintiff's allegations against all three newly identified "defendants" are patently delusional and frivolous.  Additionally, both judges assigned to this case are protected by the doctrine of absolute judicial immunity.  Therefore, the amendment should be denied.

### 3. Motion to Amend/Add Inspector Mahlman (Doc. 58)

On June 11, 2015, Plaintiff filed a third motion to amend, complaining that he has been forced to pay for copies of his ICRs out of his prison account. He seeks to add Inspector L. Mahlman as a defendant based upon the allegation that she has denied him free copies of ICRs that are relevant to this case, alleging that she has "obstruct[ed] justice, and [committed] C&U Punishment." Plaintiff does not proceed *in forma pauperis*, and even if he did, he would have no constitutional right to free copies of his institutional paperwork. Plaintiff's allegations against Inspector Mahlman fail to state any possible violation of Plaintiff's civil rights; therefore his third motion to amend should also be denied.

### 4. Motion for Leave to File an Amended Complaint, Motion to Hire representation of Counsel (Doc. 63)

On August 7, 2015, Plaintiff filed a fourth motion "for leave to file" an amended complaint, again including what is construed as a proposed fourth amendment to his complaint. Plaintiff's August 7 motion was combined with a motion "to hire representation of counsel."

In this fourth motion to amend, Plaintiff once again includes allegations that provide a version of the incident involving Defendant Distel. In this third recounting of the same incident, the pepper spraying "for absolutely no reason" occurred on September 12, 2014, leaving Plaintiff "half blind in my left eye." (Doc. 63 at 1). Plaintiff brings suit against Defendant Distel in his "individually" and in his "personal" capacity, seeking $999,999.99 for "batterie" under the ADA and 42 U.S.C. §1983. No claim is stated under the Americans With Disabilities Act, but for the reasons stated in the

12

screening of Plaintiff's original complaint, (Doc. 15), Plaintiff's §1983 claim against Defendant Distel survives the low threshold of screening standards under 28 U.S.C. §§1915 and 1915A.  Therefore, Plaintiff's fourth motion to amend will be granted to the limited extent that he will be permitted to amend the date of the alleged pepper-spraying incident to September 12, 2014, in the interest of justice, <u>despite being well beyond the 30-day time period permitted for amendment by the Court's last Order</u>.

The remainder of Plaintiff's fourth motion for leave to amend should be denied because it is duplicative of Plaintiff's multiple prior proposed amendments as well as untimely.  For the reasons previously discussed, the additional allegations also fail to state any cognizable claim, are patently frivolous, and/or are so unrelated to Plaintiff's original claim against Distel that they should not be permitted to be added to the same lawsuit.  Most of the allegations contained in this fourth motion to amend/proposed amendment reiterate earlier allegations, albeit with slight variations on dates, names, and other details.  Nevertheless, in the interest of completeness, the allegations contained in the 10-page document are briefly summarized.

In addition to the claims against Defendant Distel, Plaintiff first alleges in his fourth motion to amend that on September 24, 2012,[5] Correctional Officer Eacher was "sexually harassing me."

Plaintiff also states that he is suing Ms. Mahlman in her personal capacity for "withholding evidence," although he fails to include any other allegations against her. (Doc. 63 at 2).

---

[5] Aside from its lack of any connection to the pepper spray claim against Distel, this claim would be time-barred under §1983.

Plaintiff alleges that on September 23, 2013 while Plaintiff was cleaning human feces off of his floor and walls, Sergeant Dillow allegedly pepper sprayed him and denied him a shower. He alleges that Dillow and another officer subsequently beat him out of camera range. (Doc. 63 at 2-3).

Plaintiff alleges that on January 6, 2014, Officer Matt Barny pepper sprayed him, following which he was beaten by Officer Rush, placed on a gurney by Dillow, and had his blood drawn by a nurse against his consent. Lt. Eshem also is alleged to have been involved in dragging Plaintiff.

Plaintiff alleges that on January 9, 2014, Lt. Denney pepper sprayed Plaintiff and again took him to have his blood drawn against his will.

On June 26, 2014, Plaintiff alleges that other inmates were permitted to spit on him, and Officer Ferris pepper sprayed him in the face. Officer Ferris allegedly destroyed Plaintiff's personal property after removing Plaintiff from his cell. Inspector Goodman then falsely reported to Joanne Saul that he received his property back.

On March 2, 2015, Plaintiff alleges that Officer Porter, who previously "sexually advanced me," destroyed Plaintiff's personal property and falsely claimed that a gallon of tea was wine.

On March 17, 2015, Plaintiff alleges that he was notified of a false conduct report of graffiti in his cell, for which money was withdrawn from his inmate account (for paint) against Plaintiff's consent. Plaintiff alleges that this was done in retaliation for Plaintiff's rejection of Officer Porter's sexual advances.

On March 3, 2015, Plaintiff alleges that he refused to state his name before the Rules Infraction Board and that he was yelled at and returned to his cell, while the

hearing continued. Plaintiff alleges that as a result, Walter Sammons "put himself in contract per US Const., Art. 1 §10, l.1 with the copyright © of my 'Identity' of his own free Will. This contract is filed with the Library of Congress…." (Doc. 63 at 6-7).

On May 7, 2015, Plaintiff alleges that Officer Lawson, accompanied by Officer Schuylar, ordered Plaintiff to "show him my dick" under threats. Later, the two allegedly returned and gave a similar order, and when Plaintiff refused, they allegedly retaliated.

On October 18, 2013, Plaintiff alleges that Lt. Rogers choked him while Officer Lewis and Sgt. Dillow were twisting his cuffed wrists and engaged in similar conduct while a nurse drew his blood without his consent.

On July 26, 2015, Plaintiff alleges that Robert Porter made a verbal threat against Plaintiff's life by saying: "You're dead, bitch! Pack your shit! You're dead!"

On May 6, 2015, Plaintiff alleges that he received a Notice from Attorney General Mike DeWine that contained multiple "lies," allegedly "enforced" by Judge Beckwith and the undersigned magistrate judge. (Doc. 63 at 8-9). Plaintiff accuses Defendants of "[a]ttempting to force me to relinquish my authority over my identity so they can imprison my persona, and forge my identity on bonds such as the CQV Act of 1776…." (*Id.* at 9). Plaintiff attempts to name as Defendants Attorney General DeWine, Judge Beckwith, and the undersigned, each in their individual and/or "personal" capacities, for "identity theft, perjury, obstruction of justice, wilfull [sic] negligence, and abuse of authority under color of state upon an A.D.A./handicap inmate in this 42 U.S.C. § 1983 action." (*Id.*).

### 5. Motion to Add Sexual Battery Charges to the Defendant (Doc. 65)

In a fifth motion to amend, filed August 10, 2015, Plaintiff alleges that on August

15

10, 2015, he was sexually assaulted while being searched by a newly identified "Defendant," Officer Jeremy Eaches, as witnessed by two lieutenants and a sergeant who "chose to do nothing." (Doc. 65 at 1). For the reasons previously discussed, namely, that the fifth proposed amendment is untimely under the Court's last order, and the claim is unrelated to the original claims and should be filed, if at all, [6] as a separate action, Plaintiff's motion to add this claim should be denied.

**B. Motion for Representation/Press Charges (Doc. 57) and Motion to Dismiss Forgery and Robbery Charges (Doc. 59).**

In addition to his five motions to amend his complaint, Plaintiff has filed two miscellaneous motions. The first motion refers to another inmate allegedly forging Plaintiff's name in an incident that occurred in May 2015. Plaintiff seeks to "press charges" against the inmate in question. The second motion seeks to "dismiss" "the stated charges." Because neither motion has any relevance to any claim in this case, both should be denied.

**III. Conclusion and Recommendations**

For the reasons discussed herein, **IT IS RECOMMENDED THAT:**

1. Four of Plaintiff's motions to amend his complaint by adding claims or parties (Docs. 50, 52, 58, 65) should be DENIED;

2. Plaintiff's fourth motion to amend his complaint (Doc. 63) should be GRANTED only to the limited extent of amending the date of the Distel pepper-spraying incident to September 12, 2014, but in all other respects should be DENIED. Service of

---

[6] Aside from denying the proposed amendment on grounds that it is not sufficiently related to the original claim, the proposed amendment alternatively could be denied on grounds that it fails to adequately state a constitutional claim under *Iqbal* standards.

the construed fourth amended complaint (Doc. 63) must be made in accordance with the instructions set forth in the Memorandum Order filed this same day;

    3. The two miscellaneous motions filed by Plaintiff (Docs. 57, 59) should be DENIED.

                                  *s/ Stephanie K. Bowman*
                                  Stephanie K. Bowman
                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL JOSEPH MCDOWALL,

    Plaintiff,

v.

COLE DISTEL, et al.,

    Defendants.

Case No. 1:14-cv-780

Beckwith, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).